Filed 8/27/25  Suffolk Construction Co. v. L.A. Unified School District CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| SUFFOLK CONSTRUCTION COMPANY, INC.,<br><br>　　　Plaintiff and Appellant,<br><br>　　　v.<br><br>LOS ANGELES UNIFIED SCHOOL DISTRICT,<br><br>　　　Defendant and Appellant. | B314311<br><br>(Los Angeles County Super. Ct. No. BC494389) |

　　　APPEAL from a judgment of the Superior Court of Los Angeles County, Maren Nelson, Judge.  Affirmed with modifications.

　　　KP LAW, Zareh A. Jaltorossian, Pierce Kavcioglu Espinosa & Cesar, Timothy L. Pierce and Hector H. Espinosa for Plaintiff and Appellant.

　　　Theodora Oringher, Kevin A. Dorse, Panteha Abdollahi, Brian J. Headman, Erich R. Luschei and Timothy J. Heggem;

Office of the General Counsel, Devora Navera Reed and Mark Fall for Defendant and Respondent.

_____

## INTRODUCTION

Suffolk Construction Company, Inc. sued the Los Angeles Unified School District (District or LAUSD) for breach of contract related to its construction of the Bell Education and Career Center.  Suffolk recovered significant damages on several of its contract claims and judgment was entered in its favor, but the jury found against it with regard to certain amounts Suffolk claimed were wrongfully retained by the District.  Suffolk argues the trial court erred by entering judgment notwithstanding the verdict in favor of the District (rather than Suffolk) on the retention claim, and that it is entitled to a limited new trial on that issue because the jury returned an inconsistent verdict and the special verdict form included a "legally problematic" question.  Suffolk also challenges the trial court's ruling it was not entitled to recover from the District attorney fees Suffolk incurred in related litigation with its subcontractors.  We affirm the judgment as it relates to Suffolk's appeal.

The District cross-appeals from the trial court's award of attorney fees, costs, and prejudgment interest.  The District contends the trial court applied incorrect legal criteria to determine that Suffolk was the prevailing party for purposes of attorney fees and costs.  The District also contests the trial court's award of prejudgment interest on three payments the District made to Suffolk after Suffolk filed suit.  We modify the judgment to reduce the prejudgment interest award and otherwise affirm the judgment as modified.

2

## FACTUAL AND PROCEDURAL BACKGROUND

A.     *The Prime Contract*

On November 10, 2010, the District contracted with Suffolk to build the Bell Education and Career Center (the project) for approximately $25 million.[1]  Suffolk hired subcontractors Best Contracting Services, Inc. and Quality Production Services, Inc. (QPS), among others, in connection with the project.

The prime contract required the project to be substantially completed by June 26, 2012, but the project was delayed 141 days.  Although the school was opened and students began to use some of the facilities in August 2012, the project was not substantially completed until November 14, 2012.[2]  The prime contract authorized liquidated damages of $3,000 per day up to 180 calendar days if Suffolk failed to meet the substantial completion deadline.

Article 12 of the General Conditions and Supplementary Conditions and sections 3.06 and 3.07 of Specification 01360 in the Construction Schedule set out procedures by which Suffolk could seek extensions of time or additional compensation for extra work.  Article 12.1 stated, "All time limits in the Contract are of the essence.  The Contract Time and/or Milestones can only be adjusted by a Change order."  Article 12.3 entitled Suffolk to compensation for delays to the project caused by the District. Articles 12.4 and 12.5 required Suffolk to provide written notice

---

[1]     We adopt the parties' reference to this contract as the prime contract.

[2]     The record indicates the school was completed and all work finished by March 2013.

3

on a form provided by the District of any "issue, event condition, circumstance and/or cause of a perceived and/or actual delay, disruption, interference, hindrance, and/or acceleration" within three working days after first encountering the issue and within three working days of the end of the issue. If Suffolk then wanted an adjustment to the timeline or additional payment, it was required under Article 12.6 to submit a change order proposal (COP) within 35 days of the Article 12.5 notice.

Sections 3.06 and 3.07 set out requirements for monetary recovery for delays and requests for extensions of time. In pertinent part, section 3.06 provided: "Prior to submitting any time extension request to the Owner, the Contractor shall first demonstrate the impact by use of a detailed pre-delay and post-delay time impact analysis fragnet with an accompanied written narrative as outlined in Section 01360—Construction Schedule."[3] Section 3.07 provided detailed requirements for time extension requests. Section 3.07 also emphasized, "Adjustments to Milestones and/or Contract Time will only be authorized by Change Order."

B.      *Change Order Proposal 199.3*
        On July 6, 2012, Suffolk submitted COP 199, which sought an unspecified delay to the substantial completion date. COP 199 stated the delay was "TBD" or to be determined. The District rejected COP 199 and two subsequent versions for, among other

---

[3]      At trial, one of the District's witnesses testified that a "fragnet is a detailed explanation of what you did to get to where you say you got; so . . . it's a cookbook tactic. It's a blow by blow here is what I did. I had to move this in front of that. We had overtime. It shows how you got to where you say you got."

4

things, failure to comply with the procedures outlined in Article 12 and sections 3.06 and 3.07. On May 24, 2013, after the November 14, 2012 substantial completion date, Suffolk submitted COP 199.3. COP 199.3 was the final iteration of COP 199 and the version at issue at trial. In COP 199.3, Suffolk requested a time extension of 111 days and over $4 million it asserted was incurred due to District-caused delays. In particular, COP 199.3 requested acceleration and delay costs primarily related to problems with the installation of commercial kitchen hoods and a marquee sign.

On June 6, 2013, the District rejected COP 199.3, noting it was "as equally inconclusive as the previous versions." The District asserted, "Suffolk's claim that the delay to the project's completion was District caused is not supported." Instead, the District attributed the delay to the default of Suffolk's steel subcontractor at the beginning of the project which had a ripple effect on subsequent deadlines, as well as the defaults of other "critical" trades. The District further asserted Suffolk failed to adhere to Suffolk's own proposals to recover time by utilizing overtime, resequencing work, allowing for concurrent work, and furnishing and maintaining a sufficient workforce.

C.    *The Lawsuit*

On January 24, 2012, Suffolk sued the District, alleging three causes of action. In the first cause of action for breach of contract, Suffolk alleged the District failed to pay all sums due under the prime contract, including progress payments and

retention amounts.[4]  The prime contract contained a 10 percent retention provision.  The District was required to release the retention amounts withheld from each progress payment within 60 days of completion of the project.  Here, the District withheld $423,000 of the retention amount as liquidated damages ($3,000 per day x 141-day delay).  Suffolk also alleged the District caused delays that resulted in damages.[5]  Suffolk claimed damages in the amount of $5 million in connection with its breach of contract cause of action.

In the second cause of action for implied contractual indemnity and the third cause of action for declaratory relief,

---

[4]      "Construction contracts often call for payment in installments—known commonly as progress payments—due when a project reaches various stages of completion. . . .  As an additional hedge against nonperformance and incentive for completion, an owner may withhold a small percentage of the money due at each stage—typically 5 to 10 percent—until the project is finished.  [Citations.]  If the contractor defaults, or subcontractors assert mechanics liens for nonpayment, the owner can use this retention fund to make payment or seek substitute performance.  [Citations.]  Once work is done to the owner's satisfaction and the period for filing liens has expired, the owner will release the retention."  (*United Riggers & Erectors, Inc. v. Coast Iron & Steel Co.* (2018) 4 Cal.5th 1082, 1087-1088 (*United Riggers*).)

[5]      "'A building contractor whose performance is delayed by the owner may have increased overhead and fixed costs resulting from a delay and may suffer labor and material cost increases or loss of labor productivity due to delays for all of which he or she would be entitled to damages.'"  (*JMR Construction Corp. v. Environmental Assessment & Remediation Management, Inc.* (2015) 243 Cal.App.4th 571, 586.)

Suffolk sought to be indemnified by the District for any damages or costs it incurred in defending and resolving lawsuits previously filed by its subcontractors in connection with the project. The subcontractor suits were subsequently consolidated with the action filed by Suffolk against the District. Before trial, the subcontractors settled with Suffolk and agreed to have Suffolk litigate their claims on a "pass-through" basis.[6]

The case was tried in phases. In the first phase, the trial court ruled on an affirmative defense that is not challenged on appeal or cross-appeal. In the second phase, a jury decided Suffolk's breach of contract claim against the District. In the third phase, the trial court decided Suffolk's entitlement to recover, as damages, the attorney fees it incurred to defend itself in the subcontractor actions, and the attorney fees it paid to the subcontractors pursuant to fee provisions in the subcontractor contracts and in the payment bonds Suffolk was required to obtain. Suffolk challenges the second and third phase findings in its appeal. The District's cross-appeal challenges the trial court's subsequent attorney fees and prejudgment interest award.

---

[6]  "When a public agency breaches a construction contract with a contractor, damage often ensues to a subcontractor. In such a situation, the subcontractor may not have legal standing to assert a claim directly against the public agency due to a lack of privity of contract, but may assert a claim against the general contractor. In such a case, a general contractor is permitted to present a pass-through claim on behalf of the subcontractor against the public agency." (*Howard Contracting, Inc. v. G. A. MacDonald Constr. Co.* (1998) 71 Cal.App.4th 38, 60.)

7

1. *The Second-phase Jury Trial*

A significant issue at trial was which party bore responsibility for the 141-day delay to the project's substantial completion date, for which the District withheld $423,000 in retention amounts as liquidated damages. The trial court instructed the jury that Suffolk claimed, "the District breached this contract by providing incorrect plans and specifications for various items of work including the steel framing and kitchen hood support layout among other things. Suffolk also claim[ed] that the District breached the contract by failing to timely review and correct design errors in the plans and specifications, failing to review and approve change order requests, make payments for extra and completed work, and refusing to pay all sums due under the contract. Suffolk further claim[ed] that the District breached the contract by interfering with and delaying Suffolk from performing its obligations and unilaterally directing the contractor's means and methods of construction." In particular, Suffolk asserted the project was delayed because there were conflicts between the design of the kitchen hood supports to be installed in the ceiling and the other mechanical and electrical components contained in the ceiling. Suffolk also asserted the District failed to request the installation of a marquee until after the project had begun, leading to delays in obtaining approval from the State of California for its design and installation.

At trial, the District argued to the jury that Suffolk's mismanagement was to blame for the delay as well as the default of its original steel subcontractor, which caused downstream delays. The District also argued Suffolk was not entitled to recovery of the liquidated damages because it failed to substantially comply with the COP and fragnet requirements

8

contained in Article 12 and sections 3.06 and 3.07 in seeking additional time, payment, or change orders.

The jury found in favor of Suffolk on its general breach of contract claim and awarded damages for specified breaches, including for COPs that were improperly rejected by the District, for other COPs that were only partially approved, and for the District's failure to pay the contract balance. The jury further found COP 199.3 did not satisfy the contract claim procedures contained in Article 12 and sections 3.06 and 3.07. As a result, the jury did not award damages related to the District's rejection of COP 199.3. As further explained in the Discussion below, the special verdict form instructed the jury to stop deliberations and return the verdict if it found COP 199.3 did not satisfy the contract claim procedures. The trial court, however, instructed the jury to continue its deliberations. After it answered three additional questions on the verdict form, the jury was discharged.

The parties filed cross-motions for judgment notwithstanding the verdict (JNOV) and Suffolk additionally filed a motion for a new trial. The trial court granted the District's JNOV motion and denied Suffolk's motions for JNOV and new trial. We describe the posttrial motions and the court's ruling in greater detail below.

2. *The Third-phase Bench Trial*

In the third phase, the court conducted a bench trial on the issue of attorney fees as damages. Suffolk argued its damages included attorney fees and costs it was required to pay to the subcontractors pursuant to statutory and contractual fee provisions, as well as the fees Suffolk incurred in defending itself in the subcontractor actions. Suffolk contended it was entitled to

9

recover those attorney fees under a theory of implied contractual indemnity.  The trial court ruled Suffolk could not recover those fees as a matter of law.  We discuss the proceedings more extensively below.

Judgment on the jury verdict was entered in favor of Suffolk on its general breach of contract claims and in favor of the District on the implied contractual indemnity claim. Damages and penalty interest were also awarded to Suffolk.  The judgment reserved consideration of attorney fees, costs and prejudgment interest.

3.      *The Attorney Fees and Prejudgment Interest Orders*

After the court entered judgment, Suffolk and the District filed competing motions for attorney fees and to strike or tax the other party's memorandum of costs.  Suffolk additionally filed a motion for prejudgment interest.  The trial court issued one order addressing these motions.  The court awarded Suffolk attorney fees in the amount of $32,726.50 pursuant to Public Contract Code, section 7107 (section 7107), awarded Suffolk costs of $169,484.72 under that same section, and granted Suffolk's motion for prejudgment interest in the amount of $216,044 pursuant to Civil Code section 3278.

A "final amended judgment on jury verdict" was entered January 22, 2022, awarding damages to Suffolk in the total amount of $856,429, penalty interest in the amount of $26,681, and fees, costs, and prejudgment interest as set forth above.

Suffolk timely appealed, and the District timely cross-appealed.

10

## DISCUSSION

A.    *The Trial Court Properly Granted the District's Motion for*
      *JNOV and Denied Suffolk a New Trial and JNOV*

Suffolk argues a new trial was required because the jury returned an inconsistent verdict. It further contends the District's motion for JNOV was wrongly granted. We conclude the trial court properly granted the District's motion for JNOV and denied Suffolk's motion for JNOV and new trial motions.

   1.    *Additional Proceedings*

         a.    *The special verdict and jury deliberations*

Before closing arguments, the parties and the court discussed the verdict form and jury instructions over several days. Among the issues discussed was the interplay between compliance with the prime contract as a whole by completing the project and compliance with various individual provisions of the contract. Suffolk argued that substantial performance of the prime contract is shown as a matter of law in construction cases when an owner has taken possession of the building. Suffolk further argued that substantial compliance with individual COPs or claims would be addressed "at the damage level. Did we do what we're supposed to, to recover our overtime claim? Did we do what we're supposed to, to recover our extended general conditions claim?"

The District argued (correctly) that substantial compliance with the prime contract by completing the project was different from substantial compliance with the contract claim procedures in Article 12 or sections 3.06 and 3.07. The District requested a special verdict question and jury instructions specifically directed

11

to whether COP 199.3 fulfilled the prime contract's claim procedure requirements. Suffolk rejected parsing out substantial compliance as to each component of COP 199.3.

The jury was ultimately presented with a 14-question special verdict form. The relevant portions are as follows:

### BREACH OF CONTRACT

**QUESTION NO. 1**: Did the Los Angeles Unified School District ("LAUSD") breach the implied warranty of correctness of plans and specifications in the contract by providing Project plans or specifications to Suffolk Construction Company. Inc. ("Suffolk") that were not correct?

_____ **YES** _____ **NO**

*Continue to Question No. 2.*

**QUESTION NO. 2**: Did LAUSD breach the contract by failing to do something the contract required it to do?

_____ **YES** _____ **NO**

*If you selected "YES" to Question No. 1 or Question No. 2, continue to Question No. 3. If you selected "NO" to Question No. 1 and Question No. 2, stop and have the presiding juror sign and date this form.*

**QUESTION NO. 3**: Was LAUSD's breach of contract a substantial factor in causing harm to Suffolk?

_____ **YES** _____ **NO**

*If you selected "YES" continue to Question No. 4. If you selected "NO" stop and have the presiding juror sign and date the form.*

12

**DAMAGES FOR EXTRA WORK AND CONTRACT BALANCE**

**QUESTION NO. 4**: What damages for extra work, if any is Suffolk entitled to for the following claims (the amounts include amount for QPS and Best)?

**A.** **Rejected COPS**

[listing 10 COPs not at issue in this appeal]

**B.** **Partially Approved Change Orders**

[listing six change orders not at issue in this appeal]

**C.** **Contract Balance** (includes Buy-Out Savings, Contingency and unpaid Contract Balance)

*Continue and answer Question No. 5.*

**DAMAGES FOR DELAY, ACCELERATION, AND LOST PRODUCTIVITY**

**QUESTION NO. 5:** Subject to the Court's instructions on this issue, did Suffolk substantially comply with the contract claim procedures with respect to COP 199.3?[7]

---

[7]     Of relevance to Question 5 were Jury Instruction Nos. 38 to 41.  Jury Instruction No. 38 stated the agreed procedures for handling claims "govern the format of the claims and the manner in which the claims are presented," and "the contractor must follow those procedures except as I will explain to you."

Jury Instruction No. 39 stated Suffolk must prove it made a good faith effort to comply with the contract and time extension procedures and that it "substantially achieved the purpose of the claims procedure" to assure the District had notice and opportunity to review the issues raised in COP 199.3.

___ **YES**  ___ **NO**

*If you selected "YES" continue to Question No. 6. If you selected "NO" stop and have the presiding juror sign and date the form.*

On June 4, 2019, the jury returned the verdict form and answered "Yes" to Questions 1 through 3. It determined Suffolk was entitled to a total of $592,609 for the damages identified in Questions 4A and 4B. It also found the District owed a contract balance in Question 4C of $318,665. The jury responded "No" to Question 5 and, pursuant to the directions on the verdict form, the presiding juror signed and dated the form and returned it to the court.[8]

Upon receiving the verdict, the trial court asked the parties whether it was ambiguous, and the parties discussed whether the jury should answer any other questions in the verdict form. Suffolk argued Questions 11 through 14 ("Prompt Payment Penalties") were not precluded by the jury's "No" response to Question 5. In its view, the jury's award of a contract balance under Question 4C could include some retention amount or progress payment and thus the jury should be directed to answer Questions 11 through 14. The District opposed sending the jury

---

Jury Instruction Nos. 40 and 41 stated the District must have been prejudiced by Suffolk's failure to give timely notice under the prime contract and that Suffolk could be excused from strict compliance with the notice provision if the District had timely actual notice of the claims.

[8] The jury never answered questions 6 through 10 of the special verdict, which dealt with damages relating to COP 199.3 and are not relevant to any issue on appeal.

14

back for further deliberations, arguing the verdict was not ambiguous on its face.  The trial court instructed the jury to continue its deliberations and to answer Questions 11 and 13, and Questions 12 and 14, if appropriate.

Questions 11 through 14 provided:

**PROMPT PAYMENT PENALTIES**

**QUESTION NO. 11**: Did LAUSD wrongfully withhold retention payments from Suffolk?

____ **YES**   ____ **NO**

*If you selected "YES" continue to Question No. 12.  If you selected "NO" stop and have the presiding juror sign and date the form.*

**QUESTION NO. 12:**  For any amounts you find LAUSD wrongfully withheld from retention payments, provide the first date the funds were improperly withheld and the amount withheld (only use the lines below as needed to list improperly withheld amounts):

**QUESTION NO. 13**:  Did LAUSD wrongfully withhold the progress payments for Suffolk's Payment Application No. 24?

____ **YES**   ____ **NO**

*If you selected "YES" continue to Question No. 14.  If you selected "NO" stop and have the presiding juror sign and date the form.*

**QUESTION NO. 14**:  State the amount that LAUSD wrongfully withheld from Payment Application No. 24 and the first date those funds were improperly withheld.

During its continued deliberation, the jury asked, "May we have the relevant exhibits regarding question no. 12 and no. 14?  Also, proposed amounts for late payments, and dates?"  The parties prepared a list of relevant exhibits and a chart for the jury listing "Proposed Prompt Payment Penalty Amounts/Dates."  As to Question 12, Suffolk proposed two amounts: $423,000 withheld on January 13, 2013 and $166,754 withheld on January 23, 2015.  The District objected to answering these questions given the jury's response to Question 5.  The court stated, "I understand that point of view, . . . I think we are better off giving answers to these questions th[a]n not."  The District then proposed a prompt payment penalty amount of "$0 to maximum of $166,754.77 (LAUSD disputes merit)" that was withheld on March 23, 2015, "if applicable."

After further deliberations, the jury responded "Yes" to Question 11, finding the District did "wrongfully withhold retention payments from Suffolk" in the amount of $111,000 in liquidated damages on January 13, 2013 and $166,754 in retention amounts on March 23, 2015 (Question 12).  The jury responded "No" to Question 13 and did not answer Question 14, as directed.  The trial court discharged the jury after polling them.

      b.    *The posttrial motions*

After the jury returned the verdict, the parties filed cross motions for JNOV.  Suffolk also filed a motion for a new trial.

16

The District argued the jury's finding in Question 5 that Suffolk failed to substantially comply with the contractual claim procedures in COP 199.3 meant the District did not wrongfully withhold retention amounts, despite the jury's response to Question 12 that the District wrongfully withheld $111,000 in retention amounts as liquidated damages.[9]  According to the District, the trial court was empowered to enter JNOV in its favor on the issue of wrongfully withheld retention amounts to resolve this ostensible inconsistency in the verdict because it presented an issue of law.

Suffolk argued a new trial on COP 199.3 was "the only means to resolve the inconsistent verdicts" and that Question 5 was legally erroneous, which resulted in a legally flawed verdict. It also asserted it was entitled to JNOV because the jury's response to Question 5 was not supported by the evidence and was invalid.

The trial court issued a 42-page order granting the District's JNOV motion and denying Suffolk's motions for JNOV and new trial.  It determined that, "The verdict form does not contain irreconcilable *factual* findings, express or implied."  The court explained, "The fact that the jury found in Question 4 [awarding damages for breach of the prime contract] that Suffolk was entitled to some payment under the Prime Contract for

_____

[9]     The parties acknowledge the District released $166,754 of retention amounts to Suffolk before trial and that amount was not at issue in the parties' posttrial motions.  Because the jury determined the District wrongfully withheld $166,754 in retention amounts, however, Suffolk was entitled to penalty interest on that amount under section 7107.  The judgment therefore granted Suffolk $26,681 in penalty interest.

17

specific items does not imply that it was entitled to a time extension. The answer to Question 5 [noncompliance with claim procedures] is the jury's factual finding that Suffolk failed to substantially comply with the contract's procedures for payment for a time extension and that LAUSD was prejudiced by that conduct. The answer to Question 12 [awarding damages despite noncompliance with claim procedures] reflects the jury's factual finding that LAUSD was responsible for 37 days of the delay in completing the Project. All of these factual determinations are fully within the evidence presented. However, under the terms of the Prime Contract, Suffolk cannot recover monies for delay or acceleration where it did not comply with the procedures for a time extension, even if the jury found that LAUSD delayed the project for 37 days. [Citation.] This is a *legal* consequence of the three factual findings."

In other words, the trial court determined the verdict contained a legal inconsistency it could resolve by granting JNOV to the District on the issue of wrongfully withheld retention amounts.

### 2. *Standard of Review*

"'[A] special verdict's correctness must be analyzed as a matter of law.'" (*City of San Diego v. D.R. Horton San Diego Holding Co., Inc.* (2005) 126 Cal.App.4th 668, 678 (*City of San Diego*); see *McCoy v. Gustafson* (2009) 180 Cal.App.4th 56, 94 (*McCoy*).) "We analyze the special verdict form de novo." (*Saxena v. Goffney* (2008) 159 Cal.App.4th 316, 325 (*Saxena*).)

"'A motion for judgment notwithstanding the verdict may be granted only if it appears from the evidence, viewed in the light most favorable to the party securing the verdict, that there

18

is no substantial evidence in support.  [Citation.]  [¶]  . . .  As in the trial court, the standard of review [on appeal] is whether any substantial evidence—contradicted or uncontradicted—supports the jury's conclusion.'"  (*Cabral v. Ralphs Grocery Co.* (2011) 51 Cal.4th 764, 770; accord, *Webb v. Special Electric Co., Inc.* (2016) 63 Cal.4th 167, 192; *Markow v. Rosner* (2016) 3 Cal.App.5th 1027, 1045 (*Markow*).)  But where the "sole question before us . . . is one of law" and the "jury . . . was not asked to resolve any factual questions bearing on the question," we "address the issue under a de novo standard of review." (*Sweatman v. Department of Veterans Affairs* (2001) 25 Cal.4th 62, 68 (*Sweatman*); see *Brown v. City of Sacramento* (2019) 37 Cal.App.5th 587, 598 ["to the extent a motion for judgment notwithstanding the verdict raises legal issues such as the application of law to undisputed facts . . . , we review the trial court's ruling on the motion de novo"]; *Wolf v. Walt Disney Pictures & Television* (2008) 162 Cal.App.4th 1107, 1138 [same].)

We generally review orders granting or denying a motion for a new trial for abuse of discretion.  (See *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 859; *Denton v. City and County of San Francisco* (2017) 16 Cal.App.5th 779, 794.)  But "any determination underlying any order is scrutinized under the test appropriate to such determination." (*Aguilar,* at p. 859; accord, *Tun v. Wells Fargo Dealer Services, Inc.* (2016) 5 Cal.App.5th 309, 323.)  Here, we review the trial court's posttrial orders, including its denial of Suffolk's new trial motion, de novo because they present questions of law. (See *Aguilar*, at p. 860.)

### 3. *Background Law*

"'The verdict of a jury is either general or special.  A general verdict is that by which they pronounce generally upon all or any of the issues, either in favor of the plaintiff or defendant; a special verdict is that by which the jury find the facts only, leaving the judgment to the Court.  The special verdict must present the conclusions of fact as established by the evidence, and not the evidence to prove them; and those conclusions of fact must be so presented as that nothing shall remain to the Court but to draw from them conclusions of law.' (Code Civ. Proc., § 624.)" (*J.P. v. Carlsbad Unified School Dist.* (2014) 232 Cal.App.4th 323, 338.)  "The elements of a cause of action constitute the essential or ultimate facts in a civil case." (*Stoner v. Williams* (1996) 46 Cal.App.4th 986, 1002.)  "Ultimate facts are distinguished from evidentiary facts and from legal conclusions."  (*Central Valley General Hospital v. Smith* (2008) 162 Cal.App.4th 501, 513 ["the term 'ultimate fact' generally refers to a core fact, such as an essential element of a claim"].)  A special verdict must resolve every controverted issue in the case. (See *Myers Building Industries, Ltd. v. Interface Technology, Inc.* (1993) 13 Cal.App.4th 949, 960.)

"A special verdict is inconsistent if there is no possibility of reconciling its findings with each other."  (*Huy Fong Foods, Inc. v. Underwood Ranches, LP* (2021) 66 Cal.App.5th 1112, 1125; see, e.g., *Trejo v. Johnson & Johnson* (2017) 13 Cal.App.5th 110, 123-124 (*Trejo*) [jury found the defendant liable for negligent failure to warn, but not liable for strict liability failure to warn]; *City of San Diego*, *supra*, 126 Cal.App.4th at pp. 681-684, 686 [jury found the same property had two different fair market values]; *Mizel v. City of Santa Monica* (2001) 93 Cal.App.4th 1059, 1071

20

[jury found a dangerous condition on the defendant's property caused the plaintiff's injuries, but also found that this condition did not create a reasonable, foreseeable risk of the kind of injury the plaintiff suffered].)

"Where the jury's findings are so inconsistent that they are incapable of being reconciled and it is impossible to tell how a material issue is determined, the decision is '"against law"' within the meaning of Code of Civil Procedure section 657. [Citation.] '"The inconsistent verdict rule is based upon the fundamental proposition that a factfinder may not make inconsistent determinations of fact based on the same evidence. . . ."' [Citations.] An inconsistent verdict may arise from an inconsistency between or among answers within a special verdict [citation] or irreconcilable findings. [Citation.] Where there is an inconsistency between or among answers within a special verdict, both or all the questions are equally against the law. [Citation.] The appellate court is not permitted to choose between inconsistent answers."' (*Oxford v. Foster Wheeler LLC* (2009) 177 Cal.App.4th 700, 716 (*Oxford*).) The remedy for inconsistent verdicts is therefore to order a new trial, not to grant a judgment as a matter of law in favor of one of the parties. (See *Stillwell v. The Salvation Army* (2008) 167 Cal.App.4th 360, 374-376 (*Stillwell*); *Missakian v. Amusement Industries, Inc.* (2021) 69 Cal.App.5th 630, 654 (*Missakian*).)

A court properly grants a defendant's motion for JNOV, however, when an inconsistent verdict lacks an "essential foundational predicate" required to impose liability on the defendant. (*Trujillo v. North County Transit Dist.* (1998) 63 Cal.App.4th 280, 289 (*Trujillo*); see *McCoy, supra,* 180 Cal.App.4th at p. 63; *Simgel Co., Inc. v. Jaguar Land Rover*

21

*North America, LLC* (2020) 55 Cal.App.5th 305, 315-316 *(Simgel)*.)  As we shall explain, in such circumstances, one verdict precludes the other as a matter of law because one verdict contains an essential foundational predicate to liability while the other verdict relates to damages (as in *McCoy* and *Simgel*) or some other issue arising only after liability has been established (as in *Trujillo*).  The proper way to remedy such a defective verdict is to grant the defendant's motion for JNOV, not to order a new trial.  (See *Saxena, supra,* 159 Cal.App.4th at pp. 329-330; see also Code Civ. Proc., § 629.)

    4.    *Analysis*

Suffolk argues the jury's answers to Questions 5, 11, and 12 render the special verdict inconsistent and a limited new trial is required to resolve the inconsistency because the court is not permitted to determine that one of the verdicts prevails over the other.[10]  According to Suffolk, the jury's "No" response to Question 5 (whether Suffolk substantially complied with the

---

[10]    Although Suffolk asserts Question 4C is also irreconcilable with Question 5, it fails to explain how.  Suffolk instead subsumes its argument regarding Question 4C within its analysis of Questions 11 and 12.  Suffolk alludes to "the possibility of question 4C including retention."  Suffolk does not explain how the jury included a retention amount in its determination of the contract balance in Question 4C so that it would be inconsistent with the jury's answer to Question 5, which found the District did not owe any retention amounts.  Suffolk has failed to meet its burden to demonstrate this "possibility."  (See *Hearn v. Howard* (2009) 177 Cal.App.4th 1193, 1207 ["When an appellant raises an issue 'but fails to support it with reasoned argument and citations to authority, we treat the point as [forfeited].'"].)

contract claim procedures for COP 199.3) meant Suffolk was not entitled to a time extension and thus liquidated damages were properly withheld for the delay. By contrast, the jury's "Yes" response to Question 11 (did LAUSD wrongfully withhold retention amounts) and Question 12 (the date and amount wrongfully withheld from retention amounts) meant Suffolk was entitled to some extension of time (37 out of the requested 111 days) and thus $111,000 (37 days x $3,000 per day) in liquidated damages were wrongfully withheld.

We conclude a new trial is not required and the trial court properly granted JNOV in favor of the District because any inconsistency in the verdict was legal in nature and was properly resolved as a matter of law by the trial court. We are persuaded by *McCoy, Trujillo, Markow,* and *Simgel,* which the parties address extensively.

In *McCoy*, the jury made a finding that meant the statute of limitations had run on the plaintiff's claim. But the jury also awarded punitive damages to the plaintiff, creating a potential inconsistency in the special verdict. Because a foundational predicate for liability (i.e., the timeliness of the plaintiff's claim) was lacking, *McCoy* held the trial court should not have granted a new trial but instead it should have granted the defendants' JNOV motion based upon an examination of the legal effect of the jury's findings. (See *McCoy, supra,* 180 Cal.App.4th at p. 86.)

The *McCoy* plaintiff was a downhill property owner who sued the current and former owners of an uphill property for oil contamination to her property under theories of nuisance and trespass. (See *McCoy, supra,* 180 Cal.App.4th at p. 64.) In a special verdict, the jury found the uphill property owners caused oil contamination to be released to the downhill property but also

23

concluded it was "'unknown'" whether "'the unauthorized entry can be removed, repaired, or abated by reasonable means and at a reasonable cost.'"  (*Ibid.*)  The jury's finding meant that the nuisance and trespass were permanent and not continuing.  An action for a permanent nuisance or trespass must be filed within three years of discovery or the claim is untimely.  (See *Mangini v. Aerojet-General Corp.* (1996) 12 Cal.4th 1087, 1103 (*Mangini II*).)  It was undisputed the *McCoy* plaintiff discovered the oil contamination more than three years before the lawsuit and her claim would be timely only if the oil contamination constituted a continuing, not permanent, nuisance.  (See *McCoy,* at p. 66.)

The special verdict directed the jury to skip the remaining questions if they answered "'unknown'" or "'no'" to the question of reasonable abatement.  (*McCoy, supra,* 180 Cal.App.4th at p. 81.)  As in this case, over the defendants' objection, the court directed the jury to continue its deliberations and to answer subsequent questions, which in *McCoy* related to whether the defendants acted with malice, fraud, or oppression.  The jury answered yes and then awarded punitive damages against the defendants.  (See *ibid.*)  The defendants moved for JNOV and an order vacating the punitive damage award on the ground the plaintiff's claim was time barred.  The plaintiff moved for a new trial on all issues or solely on the issue of compensatory damages, contending the verdict was inconsistent since the jury found liability and awarded punitive damages but not compensatory damages.  The court granted the new trial motion and denied the defendants' motion for JNOV.  (See *McCoy,* at p. 83.)

The Court of Appeal reversed.  It reasoned the jury's finding that it was unknown whether the contamination could be reasonably abated meant, as a matter of law, that the plaintiff

24

had failed to prove its claim the nuisance and trespass were continuing. Because the plaintiff's claim was untimely, the trial court should have granted the defendants' JNOV motion and vacated the punitive damages award. (See *McCoy, supra,* 180 Cal.App.4th at p. 86.)

*McCoy* rejected the plaintiff's argument that a new trial was required. It explained, "the finding that defendants acted with malice, fraud, or oppression is not inconsistent with the special verdict on question No. 5. The intentional nature of defendants' conduct in trespassing or creating a nuisance is not relevant under *Mangini II* to whether the trespass or nuisance is reasonably abatable or permanent. It was not until the trial court asked the jury whether to award punitive damages that apparently inconsistent verdicts were created." (*McCoy, supra,* 180 Cal.App.4th at p. 93.)

In *Trujillo,* the jury found by special verdict that the defendant employers did not discriminate against or harass the plaintiff employees. (See *Trujillo, supra,* 63 Cal.App.4th at p. 282.) The jury, however, also found the defendants failed to take all reasonable steps necessary to prevent employment discrimination and harassment from occurring in violation of Government Code section 12940, subdivision (i). The jury awarded compensatory and punitive damages to the plaintiffs under the statute. The trial court granted JNOV to the defendants. (See *id.* at pp. 282-283.) *Trujillo* affirmed the JNOV, holding the jury's special verdict was too inconsistent to be enforced. *Trujillo* explained the statutory language did not permit "recovery on such a private right of action where there has been a specific factual finding that no such discrimination or harassment actually occurred at the plaintiffs' workplace." (*Id.*

25

at pp. 288-289.)  The JNOV in favor of the employers was correctly granted because the jury did not find the "essential foundational predicate" of harassment or discrimination for a violation of Government Code section 12940.  (*Trujillo,* at p. 289.)

*Markow, supra,* 3 Cal.App.5th at page 1032, held a defendant hospital was entitled to JNOV because the jury found the hospital's negligence was not a substantial cause of the plaintiff's injuries, but the jury also allocated 40 percent fault to the hospital.  *Markow* held the hospital could be liable for plaintiff's injuries only if the defendant doctor, whose negligence was found to have been a substantial cause of the injuries, was an agent of the hospital.  The evidence showed, as a matter of law, that the doctor was not an agent of the hospital: the plaintiff initialed and signed numerous documents over four and one-half years of treatment that expressly advised him that doctors were not agents of the hospital.  (See *id.* at p. 1040.)  Given the lack of an essential foundational predicate—ostensible agency—the Court of Appeal determined the trial court should have granted JNOV in favor of the hospital rather than order a new trial, as requested by the plaintiff.  (See *ibid.*)

Finally, in *Simgel*, the jury found the subject vehicle did not have a defect with its window mechanism.  But, due to a mistake in the instructions in the special verdict, the jury also answered other questions regarding whether the plaintiff suffered damages for the breach of the implied warranty of merchantability.  Despite finding no defect, the jury awarded the plaintiff damages under that theory.  (See *Simgel, supra,* 55 Cal.App.5th at p. 309.)  The appellate court concluded the trial court properly vacated the judgment in favor of the plaintiff and entered judgment in favor of the defendant car manufacturer

26

based on the finding there was no defect and the failure of the court or the parties to recognize that the verdict form should have instructed the jury to stop deliberating after it found that there was no defect.[11] (See *id.* at p. 319.)

As in *McCoy*, *Trujillo*, *Markow*, and *Simgel,* the verdict here lacked an essential foundational predicate (i.e., Suffolk's substantial compliance with the contract claim procedures) necessary to impose liability on the District for construction delays.[12] The trial court properly granted JNOV to the District because Question 5 precluded an award of damages in Questions 11 and 12 for withholding retention amounts. That is because in Question 5 the jury determined Suffolk did not comply with the notice and claim procedures, and hence there could be no damages for wrongful withholding of retention amounts. The trial court correctly recognized this in its statement of decision: "[U]nder the terms of the Prime Contract, Suffolk cannot recover monies for delay or acceleration where it did not comply with the procedures for a time extension, even if the jury found that LAUSD delayed the project for 37 days." The special verdict recognized the need for a "Yes" response to Question 5 as a predicate to the remaining questions and further liability. And the special verdict directed the jury to "stop and have the presiding juror sign and date the form" if it answered "no" to

---

[11] The court additionally concluded that JNOV was properly granted to the defendant because there was insufficient evidence of a defect.

[12] We address in the next section Suffolk's argument that the doctrine of substantial performance in construction law applies only to the prime contract and not to individual provisions therein.

27

Question 5. The jury did so and only reached subsequent questions on damages (Questions 11 to 14) after the court directed it to continue deliberations, as in *McCoy*.

During the ensuing posttrial motions, the trial court correctly determined that, as a matter of law, Suffolk could not recover liquidated damages absent substantial compliance with the claim procedures in the prime contract. This is similar to *Trujillo, supra*, 63 Cal.App.4th at pages 288-289, where the appellate court determined the jury's finding that no discrimination or harassment occurred precluded compensatory and punitive damages on the statutory violation for failure to prevent discrimination and harassment. Likewise, the plaintiff's failure to timely file her complaint in *McCoy* precluded punitive damages, just as the lack of ostensible agency in *Markow* precluded any allocation of fault. And in *Simgel,* the lack of a defect precluded damages for breach of the implied warranty of merchantability. In this case, as in *McCoy*, *Trujillo, Markow,* and *Simgel,* the trial court did not "choose" between inconsistent answers in the jury's special verdict. Rather, the special verdict's factual findings established the District could not, as a matter of law, be liable for the delay to the project and thus Suffolk could not recover the damages the jury awarded in Questions 11 and 12. As stated, the trial court merely determined the legal effect of the jury's findings and directed judgment in favor of the District on damages.

We are not persuaded by Suffolk's argument that a new trial was required because the trial court lacked authority to choose one verdict over another. As stated, the trial court here did not choose one verdict over another; it instead was bound as a matter of law by the jury's finding that Suffolk failed to

28

substantially comply with the contract claim procedures in COP 199.3, which precluded the District from being found liable and having to pay damages for the 141-day delay.

Suffolk cites several cases in support of its argument, but these are distinguishable. First, in *Missakian, supra,* 69 Cal.App.5th at page 637, the jury made inconsistent findings despite undisputed evidence on the issue. There, the defendant was the founder of a company who promised the plaintiff that he would receive a bonus and share in the proceeds of litigation if he came to work for the company as general counsel. The plaintiff sued the founder and the company for promissory fraud. Although the case was tried on the theory the founder, and only the founder, spoke for the company, the jury reached inconsistent verdicts when it found the company liable for promissory fraud but not the founder. (*Ibid.*) The jury awarded compensatory and punitive damages based on the company's fraud. (*Ibid.*) The trial court granted JNOV in favor of the company, reasoning that the company could not be found liable for fraud if the jury determined the founder did not make any fraudulent promises. (See *id.* at p. 642.)

The Court of Appeal in *Missakian* concluded the special verdict was inconsistent and there was no way to resolve the inconsistency because the plaintiff "framed the case solely on [the founder's] promises and never argued to the jury that [the company] made any misrepresentation through anyone other than [the founder]." Although there was evidence of other employees making promises to the plaintiff, that evidence did not undercut the pleadings, trial briefs, opening statements, jury instructions, or closing arguments. (*Missakian, supra*, 69 Cal.App.5th at p. 659.) The appellate court rejected the

29

company's argument that the JNOV should be affirmed. It held the trial court could not credit one finding (that the founder did not make false promises) over another (that the company did make false promises) when the entire theory of the case was that the founder's promises were the company's promises. Given these circumstances, a new trial was warranted and JNOV was improperly granted. (See *id.* at p. 662.)

This case is unlike *Missakian* because there the jury was presented with a single, undisputed theory of the case from which it deviated and created an inconsistent verdict. Here, there was no similar single, undisputed theory of the case. In this case, the jury made a factual finding based on disputed evidence: whether Suffolk substantially complied with the claim procedure requirements in COP 199.3. Because the jury determined the answer to this was "no" in Question 5, Suffolk was not entitled to the delay damages the jury purported to award in Questions 11 and 12. Further, here the ostensible inconsistency in the verdict resulted from the *McCoy*-like direction to continue deliberating despite the special verdict's instruction to stop if the answer to Question 5 was "No."

Suffolk also relies on *Oxford, supra,* 177 Cal.App.4th at pages 716 to 722, and *Stillwell, supra,* 167 Cal.App.4th at pages 373 to 375 to argue the trial court may not "credit the answer to question 5 and cast aside the answer to question 11." *Oxford* is distinguishable because the jury there rendered inconsistent verdicts on separate but related causes of action— negligent versus strict liability failure to warn. (See *Oxford,* at p. 721; see also *Trejo, supra,* 13 Cal.App.5th at p. 123 [same].) Such competing theories of liability did not allow the court to decide liability as a matter of law. By contrast here, Questions 5,

30

10, and 11 did not involve different irreconcilable theories of liability; instead, they involved a finding precluding liability but a finding awarding damages. The court correctly determined that as a matter of law the former precluded the latter.

*Stillwell, supra,* 167 Cal.App.4th at pages 373 to 375 is also distinguishable because the jury there found the plaintiff both was and was not an at-will employee. The jury returned a special verdict that determined there was an effective agreement for at-will employment but also that the employer breached the employer's promise to discharge the employee only for good cause. (See *id.* at p. 363.) On appeal, the parties conceded the verdicts were inconsistent and the court remanded the matter for a new trial. (See also *Shaw v. Hughes Aircraft Co.* (2000) 83 Cal.App.4th 1336, 1344-1346 [same].) Here, the jury did not find that Suffolk both did and did not substantially comply with the contract claim procedures. Further, *Oxford* and *Stillwell* are distinguishable because the inconsistent verdicts in those cases did not allow the trial court to draw from them conclusions of law, as the trial court properly did in this case.

Lastly, Suffolk relies on *Roby v. McKesson Corp.* (2009) 47 Cal.4th 686 to argue "that when a special verdict is internally inconsistent, the inconsistency cannot be explained away on the theory that it's really of a 'legal' nature and something the trial court can iron out post-verdict by accepting one finding and tossing out another." *Roby* is inapposite. *Roby* stands for the proposition that "'[d]ouble or duplicative recovery for the same items of damage amounts to overcompensation and is therefore prohibited.'" (*Id.* at p. 702.) There, the jury found the plaintiff suffered economic and noneconomic damages for three different causes of action. The court determined the noneconomic damages

31

were "'hopelessly ambiguous'" because it was "impossible to determine to a reasonable degree of certainty" whether and if the three noneconomic damages figures overlapped. *Roby* did not hold a new trial was required in every instance in which a jury reached an inconsistent verdict. (*Id.* at pp. 703, 705.)

B.    *The Trial Court Properly Included Question 5 in the Special Verdict Form and Instructed the Jury With Instruction No. 39*

The jury determined in Question 5 that Suffolk did not substantially comply with the prime contract's notice and claim procedures when it submitted COP 199.3. Suffolk argues it was deprived of a fair trial on delay damages because Question 5 and accompanying Jury Instruction No. 39 were legally incorrect and duplicative of other special verdict questions and jury instructions.[13] According to Suffolk, Question 5 and Jury Instruction No. 39 were "legally problematic" because the doctrine of substantial performance in construction law applies only to the contract as a whole, not to individual provisions contained in the contract. In Suffolk's view, that means the prime contract's notice and claim provisions were not conditions precedent (which barred Suffolk from recovering any delay damages if it failed to substantially comply) but were, instead, mere covenants (which reduced Suffolk's recovery if it did not comply with them). We conclude Suffolk's argument lacks merit.

_____

[13]    Jury Instruction No. 39 instructed the jury that Suffolk must prove it made a good faith effort to comply with the contract and time extension procedures and that it "substantially achieved the purpose of the claims procedure" to ensure the District had notice and opportunity to review the issues raised in COP 199.3.

1. *Standard of Review*

A special verdict form must allow the jury to resolve every controverted issue (see *Saxena, supra,* 159 Cal.App.4th at p. 325), and we consider de novo the correctness of a special verdict (see *City of San Diego, supra,* 126 Cal.App.4th at p. 678). Jury instructions must be supported by the pleadings and evidence developed in the specific case (see *LeMons v. Regents of University of California* (1978) 21 Cal.3d 869, 875 (*LeMons*)), and we also apply a de novo standard to decide whether a jury instruction was properly given (see *D.Z. v. Los Angeles Unified School Dist.* (2019) 35 Cal.App.5th 210, 232).

2. *Suffolk's Substantial Performance of the Prime Contract Does Not Eliminate Its Duty To Substantially Comply With the Contract's Conditions Precedent Relating to Claim Procedures*

   a. *Background law*

Three statutory provisions authorize the notice and claims procedures in the prime contract. Civil Code section 1511 authorizes parties to a contract to require written notice of an intention to claim an extension of time "within a reasonable time after the occurrence of the event excusing performance . . . provided the requirement of such notice is reasonable and just." (Civ. Code, § 1511, subd. (1).) Government Code sections 930.2 and 930.4 also authorize local public entities, such as the District, to include a claims procedure in a contract that "exclusively governs the claims to which it relates." (Gov. Code, §§ 930.2, 930.4; see *Arntz Builders v. City of Berkeley* (2008) 166 Cal.App.4th 276, 290.)

The Court of Appeal in *Greg Opinski Construction, Inc. v. City of Oakdale* (2011) 199 Cal.App.4th 1107, 1110 (*Opinski*) held that the doctrine of substantial performance[14] does not override any contractual requirement to comply with a statutorily authorized claim procedure.  In *Opinsky*, the contractor completed a project seven months late and failed to seek an extension from its municipal client.  The contract authorized written requests for extensions of time if the delay was caused by forces "'beyond the control of the Contractor,'" including "'acts of neglect by Owner.'"  (*Id.* at p. 1112.)  At trial, the contractor was found liable for liquidated damages.  He argued on appeal that such damages were precluded for "any portion of the delay that" the city had caused.  (*Id.* at p. 1115.)

*Opinski* rejected that argument and held that because the contractor failed to comply with the contractual time-extension provision, it made "no difference whether [the contractor's] timely performance was possible or impossible."  (*Opinski, supra,* 199 Cal.App.4th at p. 1118.)  It reasoned that the purpose of such contractual provisions authorized by Civil Code section 1511 "is to allocate to the contractor the risk of delay costs—even for

---

[14]    The California Supreme Court set out the doctrine of substantial performance in a construction case in *Thomas Haverty Co. v. Jones* (1921) 185 Cal. 285.  There, the high court explained that a contractor was previously held to a standard of "strict performance" before he or she could be paid.  Under the doctrine of substantial performance, by contrast, "the contractor may, in an action upon the contract, recover the amount unpaid of his contract price, less the amount allowed as damages for the failure in strict performance."  (*Id.* at p. 289; accord, *Murray's Iron Works, Inc. v. Boyce* (2008) 158 Cal.App.4th 1279, 1291-1292.)

34

delays beyond the contractor's control—unless the contractor follows the required procedures for notifying the owner of its intent to claim a right to an extension."  (*Ibid.*)

b.    *Analysis*

We conclude Question 5 and Jury Instruction No. 39 were properly presented to the jury because they related to a controverted issue raised by the pleadings and the evidence.  As we shall explain, they also accurately reflected California law on conditions precedent and substantial compliance.

First, Suffolk's complaint alleged the District breached the prime contract by "failing to provide compensation for delays that the District acknowledged are recoverable under the Prime Contract, including those addressed in Plaintiff's Government Code claim dated December 27, 2013, failing to process and pay change order requests and claims as required under the Prime Contract, and failing and refusing to pay all sums due under the Prime Contract."  In its opening statement, Suffolk's counsel told the jury that notice would be an issue at trial:  "You're also going to hear that the contract requires that notice be given and claim procedures be followed."

At trial, the District presented testimony regarding why it rejected COP 199.3 and required Suffolk to submit specific information, such as schedule fragnets, to determine whether an extension or additional payment was appropriate.  The trial court stated, "[a]n issue at trial was whether Suffolk was required to show compliance with Article 12 and Sections 3.06 and 3.07 of the Prime Contract related to the submission of the claim for additional amounts . . . for acceleration and delay costs."  The record thus demonstrates substantial compliance with the

35

contract claim procedure in the prime contract was a controverted issue to be decided by the jury and that issue was supported by the pleadings and evidence in the case. (See *LeMons, supra,* 21 Cal.3d at p. 875; *Saxena, supra,* 159 Cal.App.4th at p. 325; *City of San Diego, supra,* 126 Cal.App.4th at p. 678.)

Next, Question 5 and Jury Instruction No. 39 also comported with California law on conditions precedent. "A condition precedent is one which is to be performed before some right dependent thereon accrues, or some act dependent thereon is performed." (Civ. Code, § 1436.) Provisions "'are not to be construed as conditions precedent unless such construction is required by clear, unambiguous language; and particularly so where a forfeiture would be involved or inequitable consequences would result. [Citations.]' [Citations.] Because 'such conditions are not favored by the law, [they] are to be strictly construed against one seeking to avail [it]self of them.'" (*JMR Construction Corp. v. Environmental Assessment & Remediation Management, Inc.* (2015) 243 Cal.App.4th 571, 594.)[15]

---

[15] By contrast, "[a] covenant is a promise to render some performance." (1 Witkin, Summary of Cal. Law (11th ed. 2024) Contracts, § 801.) "The unjustified failure to perform a material promise or covenant, where the contract is entire, is a breach." (*Id.* at § 874; see *Los Angeles Gas & Electric Co. v. Amalgamated Oil Co.* (1909) 156 Cal. 776, 781; see also *Woodard v. Glenwood Lumber Co.* (1915) 171 Cal. 513, 522.) The breach of a covenant gives the other party a right of action for damages. (See Witkin*,* at § 874.) "One of the distinctive features of a covenant which distinguishes it from a condition precedent is that, when it goes only to a part of the consideration, nonperformance is not a defense if the breach of the covenant may be paid for in

36

Here, the prime contract required Suffolk to follow specific procedures, in Article 12 and sections 3.06 and 3.07, to provide notice to the District and to request an extension of the construction deadline. Articles 12.4 and 12.5 required Suffolk to report any issues that could result in delay within three working days of the beginning and the end of that occurrence. Article 12.6 provided, "Should CONTRACTOR fail or refuse to submit a Change Order Proposal as required by this Article 12.6 and/or fail or refuse to comply with the notice and other requirements of this Article 12, CONTRACTOR is not entitled to any adjustment in the Contract Amount, Milestones, and/or Contract Time." The language of Article 12.6 is clear and unambiguous: adjustments to the contract timeline are conditioned on the submission of a COP and compliance with the other notice requirements in Article 12.

Given this clear and unambiguous language, Article 12 and its related provisions constitute a condition precedent to Suffolk's right to payment for extensions to the contractual deadline. Here, Suffolk failed to fulfill a condition that was within its power to perform, and its right to payment of the withheld retention amounts therefore did not accrue. "A contrary conclusion would undermine the law of contracts by vesting in [Suffolk] the power to unilaterally convert the [District's] conditional obligation [to adjust the contract time] into an independent, unconditional obligation notwithstanding the terms

damages." (*B.F. Schlesinger & Sons v. Kohler & Chase* (1930) 103 Cal.App. 195, 199-200 (*B.F. Schlesinger*).)

37

of the [prime contract]." (*Platt Pacific, Inc. v. Andelson* (1993) 6 Cal.4th 307, 314.)[16]

Third, Suffolk's argument that in construction cases substantial performance of the contract excuses noncompliance with specific contractual provisions is unpersuasive. The cases Suffolk cites, *Thomas Haverty Co. v. Jones* (1921) 185 Cal. 285, *Murray's Iron Works, Inc. v. Boyce* (2008) 158 Cal.App.4th 1279, and *Kossler v. Palm Springs Developments, Ltd.* (1980) 101 Cal.App.3d 88, do not abrogate the well-established rule that a party must satisfy a condition precedent before "some right dependent thereon accrues, or some act dependent thereon is

---

[16] Suffolk relies on several cases for the proposition that conditions precedent are disfavored and a contract will be strictly construed against the party claiming a condition precedent. But none of those cases contains a clear and unambiguous condition precedent such as the one here. (See *Colaco v. Cavotec SA* (2018) 25 Cal.App.5th 1172, 1185 ["Nothing in the APA or the Guidelines conditioned Cavotec's obligation to make the second Performance Earn-out Payment on Inet timely and properly forwarding to Cavotec all postclosing customer payments."]; *Helzel v. Superior Court* (1981) 123 Cal.App.3d 652, 663 [interpreting ambiguous contract to contain a covenant rather than a condition precedent]; *Yamanishi v. Bleily & Collishaw, Inc.* (1972) 29 Cal.App.3d 457, 463 [ambiguous contractual provision did not create a condition precedent].)

Suffolk also argues, "Courts traditionally have construed the kinds of notice provisions in the contract here as covenants, not conditions precedent," citing *Milovich v. City of Los Angeles* (1941) 42 Cal.App.2d 364, 373-374 and *B.F. Schlesinger, supra,* 103 Cal.App. at pages 199 to 200. Again, neither case contained the type of clear and certain provisions that are in the prime contract.

38

performed." (Civ. Code, § 1436.) None of these cases addressed, much less held, that substantial performance of a contract eliminates the requirement to satisfy a condition precedent in that contract.

Further, even if the claim procedures in Article 12 were not conditions precedent, Question 5 and Jury Instruction No. 39 still comport with the law because, as the trial court correctly stated, this case is "squarely within *Opinski.*" As in *Opinski,* the project here was completed but delayed by many months and some part of the delay was attributable to the owner. The prime contract contains similar requirements for written time extension requests as the contract in *Opinski.* The time extension provision contained in Article 12 and sections 3.06 and 3.07 also similarly allocated to the contractor the risk of delay costs unless the contractor followed the claim procedure outlined in the contract. And the claim procedure in the prime contract was statutorily authorized under Civil Code section 1511 and Government Code sections 930.2 and 930.4. Although the project in *Opinski* was completed, meaning the contractor substantially performed on the contract as a whole, the appellate court nevertheless held the contractor to its promise to comply with the claim procedure before it could recover any liquidated damages for the delay. (See *Opinski, supra,* 199 Cal.App.4th at p. 1118.) The same result is required here.

Finally, we reject Suffolk's arguments that Question 5 and Jury Instruction No. 39 were duplicative of Questions 1 to 4 and Jury Instructions Nos. 18 and 30. According to Suffolk, by finding for Suffolk on Questions 1 through 4, the jury necessarily found Suffolk did "substantially all" of what was required under the prime contract, which necessarily included Article 12 and

39

sections 3.06 and 3.07.  Jury Instruction No. 18 required the jury to find Suffolk "did all, or substantially all, of the significant things that the contract required it to do" to recover damages for its breach of contract claim.  Additionally, Jury Instruction No. 30 required the jury to find that Suffolk made a good faith effort to comply with the prime contract and that the "District received what the contract called for because Suffolk's failures, if any, were so trivial or unimportant that they could have been easily fixed or paid for."  Given these special verdict questions and jury instructions, Suffolk asserts Question 5 and Jury Instruction No. 39 were unnecessary.  Because they addressed materially different issues, Question 5 and Jury Instruction No. 39 were not duplicative of Questions 1 to 4 and Jury Instructions Nos. 18 and 30.  As stated, substantial performance of the prime contract did not excuse Suffolk's failure to comply with the specific notice and claim procedures within it.

C.    *Suffolk Is Not Entitled To Recover Attorney Fees as Contractual Damages*[17]

Suffolk argues the trial court erred by ruling it was not entitled, as a matter of law, to recover "as contract damages" its

---

[17]    The District contends Suffolk did not timely identify this issue pursuant to California Rules of Court, rule 8.130(a)(2) and we should not consider the issue.  Rule 8.130(a)(2) provides: "If the appellant designates less than all the testimony, the notice must state the points to be raised on appeal; the appeal is then limited to those points unless, on motion, the reviewing court permits otherwise."  On November 18, 2021, Suffolk filed a notice designating the record that included less than all the testimony, which listed three points on appeal.  These identified issues did

40

attorney fees incurred in defending against the subcontractor actions.[18] We review this legal determination de novo. (See *Looney v. Superior Court* (1993) 16 Cal.App.4th 521, 531.)

### 1. *Additional Proceedings*

As stated, subcontractors QPS and Best, among others, filed suit against Suffolk for extra work they did on the project. The contracts between Suffolk and its subcontractors contained attorney fee provisions. Additionally, Suffolk was required by statute to obtain a payment bond that included an attorney fee provision. (See Civ. Code, §§ 9554, subd. (b) ["The payment bond shall provide that if the direct contractor or a subcontractor fails to pay [listed categories], the surety will pay the obligation and, if an action is brought to enforce the liability on the bond, a reasonable attorney's fee, to be fixed by the court[.]"]; 9564, subd. (c) ["In an action to enforce the liability on the bond, the court shall award the prevailing party a reasonable attorney's fee."].)

The subcontractors settled their claims against Suffolk. Pursuant to the settlements, Suffolk agreed to pay guaranteed

---

not include attorney fees as damages. On February 4, 2022, Suffolk filed a second record designation notice that added this issue. The District filed its respondent's brief on July 26, 2023, over one year after it received notice of all the points to be raised. Accordingly, we address the issue. (See *Cox v. Griffin* (2019) 34 Cal.App.5th 440, 448 [rejecting respondent's rule 8.130(a)(2) forfeiture argument].)

[18] Suffolk abandoned two claims it raised below: (1) entitlement to attorney fees paid to the subcontractors, and (2) entitlement to attorney fees incurred in defense against the subcontractor actions under a theory of implied indemnity.

41

amounts to the subcontractors and litigate their claims in a pass-through action against the District. In the second phase of trial, the jury awarded amounts to Suffolk for extra work done by the subcontractors as part of the pass-through action (Questions 4A and 4B).

In the third phase of trial (tried to the court), Suffolk sought as contract damages the attorney fees it paid to defend itself against the actions brought by the subcontractors, as well as the fees it paid to them pursuant to the contractual and statutory fee provisions. Suffolk's theory was that the fees were an item of damages recoverable on its successful breach of contract claim against the District and that it was entitled to recover those fees under implied contractual indemnity. The court ordered the parties, as part of a bifurcated bench trial, to brief the issue of Suffolk's entitlement to fees and whether Suffolk could make a prima facie case for damages. Although the court ultimately found Suffolk had made a prima facie showing that it incurred fees to defend against the subcontractor actions, the court determined Suffolk could not recover those fees under a breach of contract theory against the District. The court determined there was no persuasive authority to deviate from Code of Civil Procedure section 1021 (section 1021), which provides that each party is to pay its own attorney fees unless fee shifting is authorized by statute or agreement.

2. *Background Law*

"California follows what is commonly referred to as the American rule, which provides that each party to a lawsuit must ordinarily pay his own attorney fees." (*Trope v. Katz* (1995) 11 Cal.4th 274, 278 (*Trope*).) The American rule is codified in

42

section 1021: "Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties; but parties to actions or proceedings are entitled to their costs, as hereinafter provided." "[T]here is a sharp demarcation in the law between damages and costs incurred in bringing suit, including attorney fees." (*Chan v. Curran* (2015) 237 Cal.App.4th 601, 624.)

In 1963, the Supreme Court in *Prentice v. North American Title Guaranty Corp.* (1963) 59 Cal.2d 618, 620 (*Prentice*) identified an exception to the American rule in section 1021: "A person who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover compensation for the reasonably necessary loss of time, attorney's fees, and other expenditures thereby suffered or incurred." (*Prentice,* at p. 620.) *Prentice* has generally been limited to tort cases. (See, e.g., *Brandt v. Superior Court* (1985) 37 Cal.3d 813, 815 [insured alleging tort claims against insurer could recover attorney fees reasonably necessary to collect the benefits due under the policy]; *Vanguard Recording Society, Inc. v. Fantasy Records, Inc.* (1972) 24 Cal.App.3d 410, 413-414, 419 [when record company interfered with exclusive recording contract by releasing bootleg recording, the artist and her record company could recover attorney fees incurred in bringing injunctions to prevent the distribution and sale of bootleg record].)

In 1978, the Supreme Court stated, in a products liability case, that "the *Prentice* exception was not meant to apply in every case in which one party's wrongdoing causes another to be involved in litigation with a third party. If applied so broadly,

43

the judicial exception would eventually swallow the legislative rule that each party must pay for its own attorney. [Citation.] To avoid this result, *Prentice* limits its authorization of fee shifting to cases involving 'exceptional circumstances.'" (*Davis v. Air Technical Industries, Inc.* (1978) 22 Cal.3d 1, 7 (*Davis*) [disallowing attorney fees].)

3.      *Analysis[19]*

At the outset, we note that Suffolk does not seek to recover fees it incurred in the subcontractor actions based on the prime contract, which has no attorney fees provision and no contractual indemnity provision. Instead, Suffolk argues the attorney fees it incurred by defending against the subcontractor actions were the foreseeable and natural consequence of the District's breach of contract. As such, according to Suffolk, these attorney fees were recoverable as damages under *Prentice* and its progeny. Suffolk's argument lacks merit.

First, Suffolk cites no California Court of Appeal case extending *Prentice* to a contract action, and we decline to do so. It remains the law in California that each party to a lawsuit must ordinarily pay its own attorney fees, except as specifically provided for by statute or contract. (See *Trope, supra,* 11 Cal.4th at p. 278; see also § 1021.) To extend *Prentice* to contract cases would allow the exception to swallow the rule. (See *Davis, supra,* 22 Cal.3d at p. 7.) Indeed, the Supreme Court cautioned that *Prentice*'s exception to the American Rule that each side pays its

_____

[19]     Because we conclude Suffolk is not entitled to attorney fees as a matter of law, we need not address the District's claim that the prime contract bars Suffolk's claim for attorney fees as contractual damages.

own attorney fees was limited to "cases involving 'exceptional circumstances.'" (*Davis,* at p. 7; see *Howard v. Schaniel* (1980) 113 Cal.App.3d 256, 267 ["the *Davis* case has been read, and we think properly, to have confined *Prentice* to its own facts"]; *Harbor City Discount Auto Center, Inc. v. Firestone Tire & Rubber Co.* (1979) 95 Cal.App.3d 886, 891 [*Davis* reaffirmed "the rule that, absent 'exceptional circumstances,' section 1021 means just what it says and litigants are liable for their own attorney's fees"].)  A dispute between two sophisticated parties operating under a complex, negotiated prime contract does not present the exceptional circumstances justifying a departure from the American Rule envisioned by *Prentice.*

Suffolk's cases, *De La Hoya v. Slim's Gun Shop* (1978) 80 Cal.App.3d Supp. 6, 10 (*De La Hoya*), *Copenbarger v. Morris Cerullo World Evangelism, Inc.* (2018) 29 Cal.App.5th 1, 11 (*Copenbarger*), *Monster, LLC v. Superior Court* (2017) 12 Cal.App.5th 1214, 1228 (*Monster*) and *Mai v. HKT Cal, Inc.* (2021) 66 Cal.App.5th 504, 512 (*Mai*) are inapposite.[20]

*De La Hoya*, a case from the appellate division of the superior court, stated there was "no reason" not to extend *Prentice* to a breach of contract claim because other jurisdictions had adopted the rule "that attorney fees incurred in litigation with third parties may be recoverable as damages in an action for breach of contract." (*De La Hoya, supra,* 80 Cal.App.3d Supp. at p. 10.)  In *De La Hoya,* the innocent buyer of a stolen handgun

---

[20]    Suffolk asserts that other jurisdictions "have awarded damages in various breach scenarios involving third party litigation."  But "[w]e of course are not bound by rulings of . . . [the] courts of other jurisdictions." (*Robertson v. Saadat* (2020) 48 Cal.App.5th 630, 649.)

45

sought to recover attorney fees he incurred to defend against an arrest for receiving stolen property. (See *id.* at p. 8.) *De La Hoya* reasoned it was reasonably foreseeable the buyer would be arrested if his possession of the gun was questioned and the gun turned out to be stolen. The buyer would then incur attorney fees as "a natural and usual consequence" of the arrest. (*Id.* at p. 11.)

De La Hoya is neither persuasive nor binding. *De La Hoya* preceded *Davis*'s limitation of *Prentice* and, as noted, it is from the appellate division of the superior court. (See *Velasquez v. Superior Court* (2014) 227 Cal.App.4th 1471, 1477, fn. 7 ["Appellate division decisions . . . are of debatable strength as precedents and are not binding on higher reviewing courts."].) No published California Court of Appeal decision has followed *De La Hoya*. Further, it is distinguishable because it did not involve a contract negotiated between two sophisticated parties involving potentially millions of dollars.

Next, *Copenbarger, Monster,* and *Mai* are unpersuasive. None holds that attorney fees may be recovered as damages in a contract action. *Copenbarger* stated in dicta that, "Although it appears to us attorney fees may be recovered as damages for breach of contract, we do not need to decide the issue." (*Copenbarger, supra,* 29 Cal.App.5th at p. 11.) *Monster* involved contracts that contained attorney fees provisions in case of breach. It did not hold that attorney fees were recoverable as contract damages absent a contractual fee provision. (See *Monster, supra,* 12 Cal.App.5th at p. 1227, fn. 4.) And *Mai* was not a contract case at all. It fell squarely into *Prentice*'s "'tort of another'" theory of attorney fees as damages. (See *Mai, supra,* 66 Cal.App.5th at p. 512.) In short, Suffolk's argument has no support in law, and the trial court did not err by rejecting it.

46

D.	*The District's Cross-appeal*

The District raises three issues in its cross-appeal relating to attorney fees and costs, and prejudgment interest.  First, although it acknowledges Suffolk achieved a "minor win" under Public Contract Code section 7107, the District challenges the trial court's determination that Suffolk, rather than the District, was the prevailing party.[21]  Next, the District challenges the trial court's denial of its request for attorney fees under Civil Code section 9564 as the prevailing party in the third phase of trial.  Third, it challenges the award of prejudgment interest to Suffolk for certain payments the District made before the jury rendered its verdict.  We conclude only the third argument has merit.

1.	*The Trial Court Did Not Abuse Its Discretion by Concluding Suffolk Was the Prevailing Party Under Public Contract Code Section 7107*

a.	*Standard of review*

De novo review applies to a trial court's application and interpretation of the statutory criteria for an award of attorney fees.  (See *Connerly v. State Personnel Bd.* (2006) 37 Cal.4th 1169, 1175; *Yassin v. Solis* (2010) 184 Cal.App.4th 524, 530-531.)  "'We independently review any legal issue regarding the appropriate criteria for a fee award.  But once those criteria are identified, we defer to the trial court's discretion in determining how they are to be exercised.  [Citation.]  . . .  [T]he trial court is

---

[21]	While the District challenges how the court determined which party was entitled to fees and costs, it does not challenge the court's calculation of those fees and costs.

47

in the best position to determine whether the criteria for a fee award have been met.  We will not disturb its judgment on this issue unless we are convinced the court abused its discretion.  [Citation.]  A trial court abuses its discretion only where its action is clearly wrong and without reasonable basis.'"  (*Powell v. Tagami* (2018) 26 Cal.App.5th 219, 236-237; accord, *Jones v. Goodman* (2020) 57 Cal.App.5th 521, 532-533.)  "In reviewing the trial court's determination of whether a party prevailed in the litigation, we apply the deferential abuse of discretion standard of review."  (*James L. Harris Painting & Decorating, Inc. v. West Bay Builders, Inc.* (2015) 239 Cal.App.4th 1214, 1221 (*Harris*).)  In short, while we review for an abuse of discretion the trial court's determination of entitlement to and amount of an attorney fees award, we review de novo the legal question of the interpretation of who is the "prevailing party" under section 7107.  (*Graciano v. Robinson Ford Sales, Inc.* (2006) 144 Cal.App.4th 140, 149 (*Graciano*).)

> b.  *The trial court considered the proper legal criteria*

The District argues the trial court erred when it determined Suffolk was the prevailing party under section 7107.  According to the District, section 7107 applies only to the prevailing party in a cause of action for wrongful withholding of retention proceeds in public contracts, and the trial court should only have considered which party prevailed on that issue.  The District contends the trial court improperly considered the parties' relative success in the entire litigation.

As stated, retention amounts are amounts an owner may withhold from its progress payments to a contractor as a hedge

48

against the contractor's nonperformance and as an incentive for completion. (See *United Riggers, supra,* 4 Cal.5th at p. 1087.) Section 7107 is one of a series of "prompt payment" statutes that require owners and general contractors to pay their contractors and subcontractors within specified time periods or suffer monetary penalties for violations. (*FEI Enterprises, Inc. v. Yoon* (2011) 194 Cal.App.4th 790, 795.)

Section 7107 applies to contracts "relating to the construction of any public work of improvement." (Pub. Contract Code, § 7107, subd. (a).) Subdivisions (b) through (e) of section 7107 specify when and how retention amounts withheld from the contractor must be released. As relevant here, subdivision (c) authorizes the withholding of retention amounts "[i]n the event of a dispute between the public entity and the original contractor." Section 7107, subdivision (f), states: "In the event that retention payments are not made within the time periods required by this section, the public entity or original contractor withholding the unpaid amounts shall be subject to a charge of 2 percent per month on the improperly withheld amount, in lieu of any interest otherwise due. Additionally, in any action for the collection of funds wrongfully withheld, the prevailing party shall be entitled to attorney's fees and costs."

*Harris, supra,* 239 Cal.App.4th at page 1216, applied section 7107 to determine which party in a construction breach of contract case was the prevailing party entitled to attorney fees. There, a jury found neither the subcontractor nor the contractor had performed on the contract and thus it did not award damages to either party. The trial court denied the parties' cross-motions for attorney fees under section 7107, finding there was no prevailing party in the case. (See *id*. at p. 1217.) The contractor

49

appealed, arguing the trial court lacked discretion to deny attorney fees under a fee shifting statute such as section 7107.  It argued the subcontractor sought prompt payment under section 7107 in its lawsuit and because the jury found in favor of the contractor on this issue, it was the prevailing party under that statute.  (See *ibid.*)

*Harris* rejected that argument and affirmed the trial court. The appellate court reasoned that, "'[t]he determination of whether there is prevailing party is to be made "on a practical level" after considering what each party accomplished via the litigation.' [Citation.]  This means that "'[t]he prevailing party determination is to be made only upon a final resolution of the contract claims and only by 'a comparison of the extent to which each party ha[s] succeeded and failed to succeed in its contentions.'"'" (*Harris, supra,* 239 Cal.App.4th at p. 1221.)

*Harris* explained the contractor's "success on the prompt payment statute claim did not render [it] victorious because the prompt payment statute claim was encompassed within [the subcontractor's] breach of contract action.  The prompt payment statute violations were included *within* the complaint's breach of contract cause of action.  Contrary to [the contractor's] characterization of the complaint, there was no separate cause of action for the prompt payment statute violations.  Thus, the breach of contract and prompt payment violations were so intertwined that the trial court's statement about neither party prevailing on the contract encompasses the whole of the litigation.  Accordingly, we conclude the trial court appropriately looked at the litigation as a whole to determine there was no prevailing party for purposes of attorney fees." (*Harris, supra,* 239 Cal.App.4th at pp. 1222-1223; see *Brawley v. J.C. Interiors,*

50

*Inc.* (2008) 161 Cal.App.4th 1126 [similar as to private sector construction contracts under former Civil Code section 3260 (now section 8800)].)

Here, the District makes the same argument the Court of Appeal rejected in *Harris*. The District asserts it is the prevailing party on the sole issue relevant to section 7107— prompt payment of retention proceeds—and therefore it is entitled to attorney fees under that statutory provision. According to the District, it successfully defended against Suffolk's claim the District wrongfully withheld $423,000 in retention proceeds as liquidated damages. The District relies on the jury's answer to Question 5 to argue the jury found "Suffolk was not entitled to a time extension, meaning the District legally assessed liquidated damages and was entitled to keep [these damages], as reflected in the trial court's grant of JNOV." The District argues it was thus error for the trial court to determine the prevailing party based on the entire jury verdict and award of $856,429 in damages to Suffolk for the District's breach of contract.

We conclude, based on the plain language of section 7107 and *Harris,* that the trial court applied the correct legal criteria in finding Suffolk was the prevailing party. As in *Harris*, there is no separately pleaded cause of action for a violation of section 7107; the claim for retention proceeds is intertwined with Suffolk's contract claim for failure to pay delay payments, change order payments, and all other sums due.

The breach of contract cause of action in Suffolk's complaint alleged: "The District breached the Prime Contract by, among other ways, failing to provide compensation for delays . . . , failing to process and pay change order requests and

51

claims . . . , and failing and refusing to pay all sums due under the Prime Contract.  [¶]  Pursuant to the Prime Contract and California law, the District was required to timely make progress payments and release retention amounts to Plaintiff for labor, materials, equipment, and services provided by Plaintiff under the Prime Contract.  To the extent the District failed to promptly pay such progress payments and/or release such retention amounts to Plaintiff as required by the applicable California prompt payment statutes, including but not limited to Public Contract Code sections 10261 et seq. and 7107 et seq., Plaintiff seeks recovery of penalties, attorney's fees, interest, and costs from the District for such improperly withheld amounts with the amount to be determined at trial."

Suffolk's theory of recovery for its section 7107 claim is predicated on its showing that the District breached the prime contract.  Without a breach of the contract, there is no showing retention proceeds were wrongfully withheld.  Accordingly, although the District received a verdict in its favor on the section 7107 retention proceeds issue due to the jury's response to Question 5, under *Harris* the trial court did not err by examining the whole litigation to determine Suffolk was the prevailing party.

Further, section 7107, subdivision (f), permits the prevailing party "in *any action* for the collection of *funds* wrongfully withheld" (italics added) to receive attorney fees and costs.  The plain text of section 7107, subdivision (f), does not limit the award of attorney fees to the prevailing party, only in an action for the collection of *retention* proceeds wrongfully withheld.  By contrast, the first sentence in subdivision (f) clearly limits the interest penalty (rather than attorney fees and costs) to retention

52

payments that are not timely made. (See Pub. Contract Code, § 7107, subd. (f) ["In the event that retention payments are not made within the time periods required by this section, . . . unpaid amounts shall be subject to a charge of 2 percent per month on the improperly withheld amount."].) Section 7107 thus contemplates a situation where a party may receive attorney fees and costs when it prevails on claims for failure to pay funds that are intertwined with retention proceeds claims.

The District cites several cases for the proposition the court may only consider who prevails in an action for wrongfully withheld retention proceeds. (See *East West Bank v. Rio School Dist.* (2015) 235 Cal.App.4th 742 (*East West Bank*); *Graciano, supra,* 144 Cal.App.4th 140; *Denver D. Darling, Inc. v. Controlled Environments Construction, Inc.* (2001) 89 Cal.App.4th 1221 (*Denver Darling*).) But none of these cases addresses the issue in this case involving intertwined retention proceeds and contract claims, nor do they undermine *Harris,* which is directly on point.

First, the District cites *East West Bank*, *supra*, 235 Cal.App.4th at pages 749 to 750 for the general proposition that the purpose of section 7107 is directed solely to retention proceeds and that this purpose would not be served by considering the impact of change orders unrelated to retention proceeds to determine if a good faith dispute existed to withhold retention proceeds. That portion of *East West Bank* is not certified for publication and may not be cited as authority. (See Cal. Rules of Court, rule 8.1115(a).)

In all events, the published portion of *East West Bank* is consistent with *Harris'*s requirement that interrelated or common issues may determine whether to consider causes of action other than a section 7107 claim for purposes of

53

determining entitlement to attorney fees. *East West Bank* held that attorney fees under section 7107 may be apportioned between claims where there are no "common issues that must be determined to resolve both a cause of action for which fees are allowed and a cause of action for which fees are not allowed." (*East West Bank, supra*, 235 Cal.App.4th at p. 753.) But it held that where "there are no such common issues, a defendant may recover attorney fees relating solely to the cause of action for which fees are allowed." (*Ibid.*)

*Graciano, supra,* 144 Cal.App.4th at page 146, is inapposite because it addresses the mandatory fee provisions of the Automobile Sales Finance Act (ASFA) and the Consumer Legal Remedies Act (CLRA), neither of which is at issue in this case and both of which are tethered to their particular statutory schemes. (See Civ. Code, §§ 2983.4 [ASFA providing for fees and costs to be "awarded to the prevailing party in an action on a contract or purchase order subject to the provisions of this chapter"]; 1780, subd. (e) [CLRA requires court to award costs and attorney fees to prevailing plaintiff "pursuant to this section"].)

And *Denver Darling* addressed former Civil Code section 3260, which contained an identical attorney fees provision and was the equivalent to section 7107 for private construction contracts. *Denver Darling* held the trial court properly found the subcontractor was not entitled to attorney fees because the parties were engaged in a bona fide dispute concerning the retention amounts and neither party was chargeable with breach of the contract. (See *Denver Darling, supra,* 89 Cal.App.4th at p. 1241.) The court remanded the matter to the trial court to consider whether the subcontractor was entitled to attorney fees

because the contractor appeared to have wrongfully withheld more of the disputed amount than the statute allowed. (See *id*. at p. 1242.) *Denver Darling* is not authority for the proposition that a trial court is limited by the section 7107 retention proceeds claim to determine the prevailing party. *Denver Darling* did not address whether a trial court may consider the entire litigation for a prevailing party determination and the District's reliance on dicta taken from the opinion is unpersuasive.

> c. *The trial court did not abuse its discretion when it found Suffolk was the prevailing party*[22]

We now examine whether the trial court, having considered the proper legal criteria, abused its discretion when it decided Suffolk was the prevailing party. In its statement of decision, the trial court explained, "The jury found LAUSD breached the contract by providing incorrect plans and specifications. It found Suffolk was damaged as a result. While LAUSD succeeded in persuading the jury that some of the delay was attributable to Suffolk and that Suffolk did not comply with the claims procedures respecting COP 199.3, thus relieving LAUSD of any liability for wrongful retention [proceeds] based on its assessment of liquidated damages, the jury expressly found that LAUSD did wrongfully withhold retention [proceeds] in the amount of $166,754. In addition, LAUSD paid $1,232,817 on the contract after the action was filed. Whether measured by looking at the litigation as a whole or the wrongful retention claim within the

_____

[22] Section 7107 allows a prevailing party to recover "attorney's fees and costs." Because we determine Suffolk was the prevailing party with regard to attorney fees, it was also entitled to costs under section 7107.

55

breach of contract cause of action, Suffolk is the prevailing party."

The court did not abuse its discretion, and substantial evidence supports its prevailing party determination. (See *Harris, supra*, 239 Cal.App.4th at p. 1221.) Suffolk recovered $856,429 on its breach of contract claim and $26,681 in prompt payment penalties under section 7107. It also received approximately $1.2 million from the District after Suffolk filed its complaint, also pursuant to the requirements in section 7107.[23] The trial court did not act arbitrarily, irrationally, or beyond the bounds of reason when it decided Suffolk was the prevailing party. (See i*bid.*; see also Pub. Contract Code, § 7107, subd. (f); *Maynard v. BTI Group, Inc.* (2013) 216 Cal.App.4th 984, 994 [a party who receives a net monetary recovery in an action is the prevailing party in the "'ordinary or popular sense'" of the term].)

The District's alternate evaluation of the parties' relative recoveries is specious. The District argues it, and not Suffolk, was the prevailing party because Suffolk recovered far less than it sought at trial. Examining the litigation as a whole, Suffolk sought $4,090,139 for failure to pay COP 199.3, $2,102,658 for its other breach of contract damages, and over $1.3 million in wrongful withholding of retention amounts, but it recovered nothing for the failure to pay COP 199.3, and only $856,429 in contract damages and $26,681 for wrongful withholding of retention amounts. But a party's recovery at trial of an amount of damages less than what it sought does not mean it is not a

---

[23] As explained below, during trial the District paid to Suffolk $928,279 for Suffolk's last payment application on the project, plus two disbursements totaling approximately $300,000 for previously approved amounts.

prevailing party. (See *de la Cuesta v. Benham* (2011) 193 Cal.App.4th 1287, 1295 ["the reality of litigation, almost universally recognized," is that "[a]ttorneys tend to err on the side of overstating the extent of the claims being presented on their client[s'] behalves"]; *Bowman v. City of Berkeley* (2005) 131 Cal.App.4th 173, 177-178 (*Bowman*) [attorney fees awarded despite court's acknowledgment that plaintiffs' case was "largely unsuccessful"]; cf. *Buck v. Barb* (1983) 147 Cal.App.3d 920, 926 [that a party recovered "less than the amount he prayed for does not make his adversary the prevailing party within the meaning of Civil Code section 1717"].)

2. *The Trial Court Did Not Err by Denying Attorney Fees Under Civil Code Section 9564 in the Third Phase*

As stated, the District challenges the trial court's denial of attorney fees to it under Civil Code section 9564 as the prevailing party in the third phase of trial. The trial court did not err because that statutory provision does not apply to the District.

Generally, a contractor like Suffolk that is awarded a public works contract in excess of $25,000 is required to obtain a payment bond to ensure payment to claimants if a direct contractor or a subcontractor fails to pay. (Civ. Code, § 9550.) "A claimant may maintain an action to enforce the liability of a surety on a payment bond whether or not the claimant has given the public entity a stop payment notice." (See Civ. Code, § 9564, subd. (a).) "In an action to enforce the liability on the bond, the court shall award the prevailing party a reasonable attorney's fee." (*Id.,* subd. (c).) The District argues it is entitled to attorney fees under Civil Code section 9564, subdivision (c), because the

57

third phase bench trial arose from "actions on the bond" and it is the prevailing party in this phase of the litigation. We are not persuaded.

Suffolk's action against the District was not one to "enforce the liability on the bond." First, Suffolk is not a claimant "authorized under Section 9100" of the Civil Code to maintain an action to enforce the liability of a payment bond, such as an employee, architect, project manager, or "other person having charge of all or part of the public works contract." (Civ. Code, §§ 9100, subd. (a)(1), 9554, subds. (b)(1), (c).) Civil Code section 9100, subdivision (a), does not include the owner of the project, such as the District, as an authorized claimant and subdivision (b) of that section expressly excludes a direct contractor such as Suffolk from "assert[ing] a claim against a payment bond under this title." In short, the statutory scheme does not contemplate recovery of attorney fees in a lawsuit between a contractor and a public entity owner.

Second, as discussed, Suffolk's complaint against the District was for breach of contract and breach of implied contractual indemnity. Suffolk did not plead a cause of action against the District to enforce liability of the bond under Civil Code section 9564. Nor does Suffolk seek attorney fees under that section. The District "acknowledges Suffolk did not sue it 'on the payment bond.'" But it asserts that "the Phase 3 trial qualifies as 'an action on the bond' under Section 9654" because "Suffolk tried to transfer its liability on the bond for subcontractor attorney's fees to the District." Suffolk, however, attempted to transfer its liability on the bond into a separate action that asserted breach of contract and implied indemnity causes of action. The District cannot bootstrap statutory

58

attorney fees provisions onto a separate action that does not involve that statute.

*Walt Rankin & Associates, Inc. v. City of Murrieta* (2000) 84 Cal.App.4th 605, 630 (*Rankin*), is instructive. There, a subcontractor brought an action against the surety of a payment bond when the general contractor of a project failed to pay the subcontractor. The subcontractor discovered the surety providing the payment bond was not solvent or authorized to do business in the state. (See *id.* at p. 611.) The subcontractor added the city as a defendant in its action relating to the park project, alleging the city was negligent for approving the payment bond without verifying the surety was solvent or able to do business in the state. (See *id.* at p. 612.) As relevant here, the appellate court denied attorney fees to the subcontractor under a statutory fee provision similar to Civil Code section 9564. *Rankin* held the claim against the city was "in the nature of a tort action against the City for failure to perform a mandatory duty" and "was not an action on the bond, or an action to enforce payment of the bond." (*Id.* at p. 630.)

Here, Suffolk's action was not on the bond or to enforce payment on the bond. It did not sue the District based on Civil Code section 9564. That Suffolk attempted to recover in this action, as contract damages, its payment of attorney fees to the subcontractors and the attorney fees it incurred in defending against the subcontractor lawsuits does not transform this contract action into an action to enforce a payment bond.

59

3. *The Trial Court Erred When It Awarded $169,828 in Prejudgment Interest*

Lastly, the District argues the trial court erroneously awarded Suffolk prejudgment interest of $169,828 pursuant to Civil Code section 3287, subdivision (a) (section 3287(a)), on three payments it voluntarily made to Suffolk before the jury's verdict. The District contends prejudgment interest on these payments was not authorized by section 3287(a) because Suffolk failed to demonstrate the payments met the statutory requirements (they were "certain or capable of being made certain" and Suffolk had a right to recovery that vested on a particular day), or that the payments constituted damages that were awarded by a court or jury.

a. *Additional background*

In the final amended judgment, the trial court granted Suffolk prejudgment interest totaling $216,044, mostly arising from three payments the District made to Suffolk after Suffolk filed suit: a $928,279 payment for Suffolk's final payment application (Pay App 24), and two disbursements totaling $304,538 for amounts that were owed to Suffolk under the prime contract after completion of the project (phase 2 payments).[24]

At trial, the evidence demonstrated that on November 20, 2013, approximately one year after the substantial completion date for the project, Suffolk submitted Pay App 24 to the District.

---

[24] The total prejudgment interest award of $216,044 also included prejudgment interest of $46,216 for the delayed payment for change order T-643, which was a pass-through claim submitted on behalf of QPS. The District does not challenge this portion of the prejudgment interest award on appeal.

60

The District denied the application, citing "multiple calculation errors regarding the Contract retention, total amounts earned, amounts previously paid by the District, and the balance due." Suffolk made its final submission of Pay App 24 on March 21, 2014, after it had filed its lawsuit.

On May 30, 2014, the District paid $928,279 on Pay App 24 after "unilaterally" calculating the "accurate" amount due.[25] (While Suffolk argues the District paid less than it owed, Suffolk does not pursue additional monies for Pay App 24 in this appeal.)

During the jury trial, the District issued the phase 2 payments to Suffolk. On March 20, 2019, the District issued a check to Suffolk for $292,569, representing Suffolk's 50 percent share of developer contingency savings.[26] On April 15, 2019, the District issued a check for $11,969, representing the amounts the District had previously approved for an allowance draw and a contingency draw.

The approvals for the phase 2 payments were not discovered until the District's manager overseeing the finance and accounting department reviewed the accounting records in

[25] The court observed Suffolk sought prejudgment interest on $911,274 even though the evidence indicated the actual amount paid was $928,279.06. The court awarded the amount sought by Suffolk.

[26] The prime contract provides for a "Construction Contingency for the benefit of the Developer." The provision states, "In the event Developer completes the construction of the School Improvements, without exhausting the Construction Contingency, then the balance of the Construction Contingency shall be shared in the percentage amounts shown in the Developer's Price Proposal," which the District's witness testified was 50 percent to the District and 50 percent to Suffolk.

61

preparation for his deposition.  He testified these draws were approved "but they were never presented in an application for payment and never paid."  It was his understanding the amounts were not paid because "it was in litigation at the time and was frozen."

Suffolk moved for prejudgment interest on liquidated claims paid by the District during trial pursuant to section 3287(a) and on unliquidated claims (i.e., the jury's contract damages award) under subdivision (b) of section 3287. Suffolk argued Pay App 24 and the phase 2 payments were liquidated claims because they were damages certain, or capable of being made certain, by calculation and should have been disbursed at the latest by the time Suffolk submitted its final version of Pay App 24 on March 21, 2014.

The trial court denied Suffolk's request for prejudgment interest under Civil Code section 3287, subdivision (b), but awarded prejudgment interest under section 3287(a) of $216,044. The court found the amounts were capable of being made certain under section 3287(a) from the testimony of the District's accounting witness.  The court rejected the District's argument that Suffolk was not entitled to prejudgment interest where the amounts were not adjudicated or billed.  The court also stated, "Nor is it persuasive to argue that interest should not be paid on Pay App 24 because the jury found that LAUSD did not wrongfully withhold this progress payment.  While this finding excused LAUSD from prompt payment penalties it does not mean the amount was unliquidated.  LAUSD itself calculated the amount."

On appeal, the District challenges the following prejudgment interest awards: (1) $17,476 in interest on the

62

District's payment to Suffolk of $928,279 for Pay App 24 (prejudgment interest from March 21, 2014 to May 30, 2014); and (2) $152,352 in interest on the two checks the District issued to Suffolk during the second phase of the trial (prejudgment interest for the five-year period from March 21, 2014 to March 20, 2019).

> b. *Standard of review and governing law*

We review the court's award of prejudgment interest for abuse of discretion. (See *A & M Produce Co. v. FMC Corp.* (1982) 135 Cal.App.3d 473, 496.) The interpretation of the prejudgment interest provisions of section 3287(a), however, is a question of law subject to de novo review. (See *Flethez v. San Bernardino County Employees Retirement Assn.* (2017) 2 Cal.5th 630, 639 (*Flethez*).)

> Section 3287(a) provides:
>
> A person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in the person upon a particular day, is entitled also to recover interest thereon from that day, except when the debtor is prevented by law, or by the act of the creditor from paying the debt. This section is applicable to recovery of damages and interest from any debtor, including the state or any county, city, city and county, municipal corporation, public district, public agency, or any political subdivision of the state.

"[I]n order to recover prejudgment interest under this statute, 'the claimant must show: (1) an underlying monetary obligation, (2) damages which are certain or capable of being made certain by calculation, and (3) a right to recovery that vests on a particular day.'" (*Flethez, supra,* 2 Cal.5th at p. 640.) "[I]t

has long been settled that the primary purpose of section 3287(a) 'is to provide just compensation to the injured party for loss of use of the [underlying] award during the prejudgment period—in other words, to make the plaintiff whole as of the date of the injury.'" (*Id.* at p. 643.)  Prejudgment interest under section 3287(a) is thus considered a component of damages.  (See *id.* at p. 635, fn. 2.)  Civil Code section 3281 defines damages as follows:  "Every person who suffers detriment from the unlawful act or omission of another, may recover from the person in fault a compensation therefor in money, which is called damages."  "[I]t is clear that Civil Code section 3287 looks to the certainty of the damages suffered by the plaintiff, rather than to a defendant's ultimate liability, in determining whether prejudgment interest is mandated." (*Wisper Corp. v. California Commerce Bank* (1996) 49 Cal.App.4th 948, 958.)

c. *Analysis*

The District contends the trial payments do not constitute damages within the meaning of section 3287(a) and Civil Code section 3281 because it voluntarily made the payments and the amounts were not awarded by a court or jury.  The District further contends Suffolk failed to show the prerequisites for prejudgment interest under section 3287(a); that is, damages that were certain or capable of being made certain by calculation, and a right to recovery that vested on a particular day.[27]  We conclude the District is correct that Suffolk is not entitled to

---

[27]   The District does not dispute Suffolk showed an underlying monetary obligation as to the payments at issue.

64

prejudgment interest on amounts the District voluntarily paid that were not "damages" as defined by Civil Code section 3281.

An award of prejudgment interest under section 3287(a) extends only to amounts adjudicated as damages by a jury or trial court, as opposed to authorizing interest on voluntary payments by a litigant during the course of trial which were not part of any judgment. Under Civil Code section 3281, damages must arise from "the unlawful act or omission of another." In *Mass v. Board of Education* (1964) 61 Cal.2d 612 (*Mass*), the California Supreme Court reasoned that a finding of wrongful action must precede the award of prejudgment interest. In *Mass,* a local board of education wrongfully suspended a teacher, who was thus entitled to reinstatement and back pay from the date of suspension. (*Id.* at p. 616.) The Supreme Court determined the teacher was also entitled to prejudgment interest pursuant to section 3287(a) from the dates upon which his salary payments were due. (*Id.* at p. 625.) The Court explained, "Each salary payment in the instant case accrued on a date certain. Unless the suspension itself can be sustained and the board thus relieved of any obligation whatsoever, the salary payments became vested as of the dates they accrued." (*Ibid.*; see also *Meister v. Mensinger* (2014) 230 Cal.App.4th 381, 396 (*Meister*) ["'Damages' are the monetary compensation awarded to parties who suffer detriment for the unlawful act or omission of another; they are assessed by a court against wrongdoers for the commission of a legal wrong of a private nature."].)

Without a concession by the District or a finding that the District acted unlawfully, the payments to Suffolk were not

65

damages to which prejudgment interest could attach.[28]  Indeed, the jury answered "No" to Question 13, which asked, "Did LAUSD wrongfully withhold the progress payment for Suffolk's Payment Application No. 24?"  The jury's finding means the District's payment to Suffolk for Pay App 24 may not be characterized as damages arising from an unlawful act or omission.  We are not persuaded by the trial court's attempt to distinguish the jury's finding in Question 13.  The trial court stated the jury's finding "excused LAUSD from prompt payment penalties [but] it does not mean the amount was unliquidated."  This analysis does not account for the requirement of unlawful conduct under Civil Code section 3281 and *Mass.*  The trial court thus abused its discretion by awarding prejudgment interest under section 3287(a) as to this payment when the jury expressly found no wrongful conduct.  (See *Horsford v. Board of Trustees of California State University* (2005) 132 Cal.App.4th 359, 393 ["judicial discretion must be measured against the general rules of law and, in the case of a statutory grant of discretion, against the specific law that grants the discretion"].)

The jury made no findings regarding the phase 2 payments, much less that the District committed an "unlawful act or omission" in failing to make these payments before trial.  This is because the phase 2 payments were never at issue.  In its motion for prejudgment interest, Suffolk acknowledged it was not aware these amounts were owed:  "To Suffolk's surprise, LAUSD issued

_____

[28]    We express no opinion on whether any interest due as damages based on the amounts the District paid is recoverable under a separate action for damages.  (See *Kawasho Internat., U.S.A., Inc. v. Lakewood Pipe Service, Inc.* (1983) 152 Cal.App.3d 785.)

66

two more checks." The District paid the amounts in question before its obligation was reduced to a judgment, and Suffolk accepted those payments, apparently without protest. After trial, Suffolk cannot then go back to the trial court and request payment of prejudgment interest on damages that were never determined to have arisen from an unlawful act or omission. (Cf. *Meister, supra,* 230 Cal.App.4th at p. 396.) Suffolk did not meet its burden to show unadjudicated payments of money paid to Suffolk for amounts that were not awarded or assessed by any jury or court satisfies the definition of "damages" under section 3287(a) and Civil Code section 3281. (See *Flethez, supra,* 2 Cal.5th at p. 640.)

Accordingly, we strike from the judgment the award of prejudgment interest in the amount of $169,828, which is based on amounts the District paid to Suffolk before judgment.

## DISPOSITION

The judgment dated January 22, 2022 is modified to strike the award of prejudgment interest to Suffolk from LAUSD in the amount of $169,828, leaving an award of $46,216. The judgment is otherwise affirmed as modified. The parties are to bear their own costs on appeal.

MARTINEZ, P. J.

We concur:

FEUER, J.                                          STONE, J.

67